1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

| | |
|---|---|
| LAYSON'S RESTORATIONS, INC., | CASE NO. 3:16-cv-05034-RJB |
| Plaintiff/Appellant, | ORDER AFFIRMING ORDER GRANTING SUMMARY JUDGMENT |
| v. | |
| JOHN A. STERBICK; THE LAW OFFICES OF JOHN A. STERBICK, P.S., | |
| Defendants/Appellees. | |

17

18

19

20

21

22

23

24

This matter comes before the Court on Layson's Restorations, Inc. (Layson's) appeal of a bankruptcy court order summarily dismissing Layson's complaint in an adversary action.  Dkt. 8-2 and Bank. Adversary Proc. 15-04158-PBS, Dkt. 19. The Court has considered Layson's appeal, the briefing filed in response, and the remainder of the file herein.

In this adversary action, Layson's asserts that John A. Sterbick and the Law Offices of John A. Sterbick ("Sterbick") committed malpractice in the handling of its bankruptcy case.  The bankruptcy court summarily dismissed the adversary complaint based on the doctrine of res judicata because of its holdings when it awarded attorney's fees and costs to Sterbick under the

1   bankruptcy code.  It also noted that collateral estoppel may apply.  Layson's now appeals the

2   dismissal of the complaint.  For the reasons stated below, the decision to dismiss the adversary

3   complaint should be affirmed.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The underlying bankruptcy case is *In re Layson's Restorations, Inc.*, U.S. Bankruptcy
Court for the Western District of Washington, case number 11-43910 PBS.

### A.  GENERAL FACTUAL BACKGROUND FROM ADVERSARY COMPLAINT

The following background is taken from Layson's complaint in the adversary action
(filed in this appeal at Dkt. 9-4) and is recited here as context for the findings and rulings below.

According to Layson's complaint in the adversary action, on May 6, 2011, Raffi
Minasian obtained a judgment of $412,140.10 against David Layson and his wife in their
personal capacities.  Dkt. 9-4, at 5-6.  Layson's asserts that the judgment was not against it, and
the statute of limitations to add it to Minasian's case was due to run in a matter of weeks.  *Id.*, at
6.

On the advice of attorney Sterbick, on May 13, 2011, Layson's filed a Petition for
Voluntary Bankruptcy under Chapter 11.  *Id.*, at 6.  The petition was prepared by Sterbick.  *Id.*
Sterbick charged Layson's a pre-petition retainer of $7,000 and collected another $13,000 for
later charges, for a total of $20,000.  *Id.*, at 7.  Layson's contends that by filing the petition
immediately, it had the effect of staying the statute of limitations of any claims by Minasian
against Layson's.  *Id.*, at 6.

The adversary complaint alleges that after the petition was filed, Layson's primary
creditor, Washington Federal Bank, informed Sterbick that it would not voluntarily grant
permission for Layson's to use the cash collateral to operate the business.  *Id.*  Sterbick did not

1  seek court permission to use the cash collateral, a motion Layson's asserts is a common motion

2  in Chapter 11 cases.  *Id.*  According to Layson's, the failure to file this motion resulted in

3  Layson's having to enter into an unfavorable settlement with the bank.  *Id.*

4       Under 11 U.S.C. § 1121(e)(1), Layson's had the exclusive right to file a Chapter 11 plan

5  within a certain time period.  *Id.*, at 7.  Layson's asserts that Sterbick failed to file the plan within

6  the proper time period or seek an extension of time  - leaving Layson's vulnerable to a creditor

7  stepping in with its own plan or, as occurred here, having the U.S. Trustee file a motion to

8  dismiss or convert to a Chapter 7.  *Id.*  Layson's asserts that it incurred additional costs and fees

9  fighting the U.S. Trustee's motions.  *Id.*

10      Layson's maintains that during the course of his representation of it in the Chapter 11,

11 Sterbick submitted at least 8 orders to the bankruptcy court that were rejected as either improper

12 or untimely.  *Id.*  Layson's alleges that when Sterbick finally did prepare a Chapter 11 plan, it

13 required Layson's to pay all debts in full, something the bankruptcy court likely would not have

14 required.  *Id.*

15      **B.  STERBICK'S APPLICATION FOR FEES AND THE DISPUTES**

16      The remaining facts are taken from both the adversarial complaint and the record in this

17 appeal.

18      Sterbick filed his first application for court approved attorney's fees on December 15,

19 2011, for $10,039.72.  Dkt. 8-7, at 21.  No objections were made to the request and it was

20 approved by the bankruptcy court.  Dkt. 8-7, at 30-31.  Sterbick was paid out of the money

21 Layson's gave him at the start of the case, which according to Sterbick, after this payment left

22 $1,881.28 in his trust account.

23

24

1     On August 1, 2012, Sterbick filed his second application for $34,082.27 in attorney's fees

2  and 369.90 in expenses.  Dkt. 8-7, at 38-42.  (Layson's adversarial complaint contends that

3  Sterbick filed this second application without informing it and while David Layson was out of

4  town.  Dkt. 9-4, at 7.)  The Bankruptcy Court was not informed of any objections to the request,

5  and the request for a total of $34,452.17 was approved on September 4, 2012.  Dkt. 8-7, at 44.  A

6  little over a week later, Sterbick paid himself $1,881.28, which came from his trust account.

7  Dkt. 8-8, at 30.

8     A dispute over the fees ensued.  Dkt. 8-8, at 31.  Layson's alleges in its adversary

9  complaint that without notification to Layson's, Sterbick then froze $32,563.89 from its bank

10  account using an "attorney lien."  Dkt. 9-4, at 8.  Sterbick was still the attorney of record for

11  Layson's.  This hold was eventually released.  Dkt. 8-7, at 182.

12     On October 3, 2012, Sterbick moved to withdraw from the case, citing disputes with

13  Layson's over the unpaid fees and costs.  Dkt. 8-7, at 54-58.  Sterbick was aware that Layson's

14  could not continue in the bankruptcy unrepresented by counsel.  Dkt. 8-8, at 31.

15     Layson's hired independent counsel, David Smith, to contest this second fee application

16  in late September/early October 2012.  See Dkt. 8-7, at 71-74 and 83.

17     On October 26, 2012, the bankruptcy court approved a stipulation by the parties for

18  $14,000 to be distributed from Layson's bankruptcy estate for a partial payment of the second

19  fee application.  Dkt. 8-7, at 128-129.  Sterbick was permitted to withdraw from the case on

20  November 1, 2012.  *Id.*  A hearing was reset for November 15, 2012 regarding the remaining

21  amounts Sterbick contended were due based on the bankruptcy court's September 4, 2012 order

22  on the second application for fees and costs.  *Id.*

23

24

1    On November 8, 2012, Layson's, through attorney David Smith, filed a Supplemental

2  Memorandum Regarding Investigation of Sterbick Accounting on Request for Disbursement.

3  Dkt. 8-7, at 131-138.  In this memorandum, Layson's argued that the remainder of Sterbick's

4  second fee request should not be distributed because the fees were not charged in accordance

5  with the fee agreement between Sterbick and Layson's.  *Id.*  Layson's pointed out that higher

6  rates were charged than were listed in the fee agreement.  *Id.*  Layson's asserted that the $7,000

7  payment which Sterbick received upon filing the petition should be disgorged.  *Id.*  Layson's

8  argued that under 11 U.S.C. § 328, the bankruptcy court may only allow payment of reasonable

9  compensation "for actual, necessary services."  *Id.* (*quoting* 11 U.S.C. § 328).  Layson's also

10  noted that under 11 U.S.C. § 329(b), the bankruptcy court may cancel a fee agreement or order

11  the return of excessive fees paid if the payments exceeded the reasonable value for the attorney's

12  services.  *Id*.  Layson's argued that the $7,000 nonrefundable retainer fee Sterbick collected at

13  the time he was hired was not permitted because it was unreasonable and was not for fees that

14  were actually incurred.  *Id.*  Layson's also maintained that it had been double billed.  *Id.*

15    Sterbick filed a response, and agreed to forgo the $7,000 retainer fee and reduced the

16  requested amount by $1,234.40 to reflect the billing rates in the fee agreement.  Dkt. 8-7, at 140-

17  146.  He then sought a remaining balance of $10,336.49.  *Id.*

18    On November 29, 2012, attorney Brett Wittner filed a notice of appearance for Layson's.

19  Dkt. 8-7, at 169.

20    On November 30, 2012, the bankruptcy court approved Sterbick's modified second

21  request for fees, and ordered that $10,336.49 be distributed out of the estate.  Dkt. 8-7, at 148.

22    Sterbick filed a third and final fee application for $9,446.65 on December 6, 2012.  Dkt.

23  8-7, at 153.

24

1      After receiving a Writ of Garnishment, Key Bank sent Sterbick $10,336.49 from

2   Layson's bank account on December 7, 2012.  Dkt. 8-7, at 151.  Layson's asserted that it was not

3   given notice of the garnishment.  Dkt. 9-4, at 8.

4      Layson's, through attorney Wittner, filed an objection to the application for the final

5   request for attorney's fees on December 10, 2012.  Dkt. 8-7, at 169-170. Layson's argued that

6   the amount of fees requested was unreasonable; that the work performed was done to correct

7   prior errors and mistakes made by Sterbick and his office.  *Id.*  Layson's also argued that the fees

8   charged were excessive.  *Id.*  Layson's maintained that Sterbick did not notify it of the December

9   6, 2012 garnishment from the Key Bank account, and asserted that this garnishment was

10  improper.  *Id.*

11     On December 11, 2012, Sterbick filed a Writ of Garnishment for $10,884.04 (based on

12  the bankruptcy court's November 30, 2012 order) to be collected from Layson's bank account at

13  Boeing Employees Credit Union; an additional Writ of Garnishment for Key Bank was filed as

14  well.  Dkt. 8-7, at 158-160.  Both the accounts were frozen.  Dkt. 8-8, at 32.  According to the

15  adversarial complaint, Sterbick was informed by the bankruptcy judge that this attempt at double

16  recovery was not permitted by the bankruptcy code.  Dkt. 9-4.  The funds were eventually

17  released back to Layson's.  Dkt. 8-8, at 33.

18     On January 18, 2013, Layson's filed a Supplemental Objection to Application for Final

19  Attorney's Fees.  Dkt. 8-7, at 181-194.  In this Objection, Layson's argued that Sterbick failed to

20  provide competent legal advice in this bankruptcy case.  *Id.*  It argued that Sterbick "improperly

21  advised" Layson's to file the Chapter 11 petition because the Minasian judgment was not against

22  Layson's, but against Mr. and Mrs. Layson personally.  *Id.*, at 183.  Accordingly, Layson's

23  maintained, there was no reason to file the petition at all.  *Id.*  Layson's asserted that "due to the

24

1    inexperience of Sterbick in Chapter 11 cases, numerous mistakes were made that resulted in the

2    excessive fees charged . . . and caused numerous damages, including attorney's fees to correct

3    the mistakes."  *Id.*  As example of a mistake Sterbick made, Layson's argued that Sterbick failed

4    to properly advise the principals of Layson's regarding an "officer's note," which was required

5    as a part of the bankruptcy.  *Id.*  Further, it pointed out that despite receiving $44,336.49 in fees

6    for a relatively simple Chapter 11 bankruptcy involving two major creditors, the matter was still

7    not resolved.  *Id.*  Layson's maintained that Sterbick failed to give it notice of his fees

8    applications.  *Id.*  It argued that the "blatant and repeated garnishment of bank accounts has

9    severely impacted [Layson's] ability to conduct business," were improper, and resulted in

10   significant unnecessary fees and loss of business.  *Id.*  Layson's argued that the $10,336.49 that

11   was garnished from the Key Bank account should be disgorged and the final application for

12   attorney's fees should be denied.  *Id.*, at 184.

13        The bankruptcy court held a hearing on the final application for fees on February 14,

14   2013.  Dkt. 8-8, at 5.  The court noted that it had never seen a bankruptcy lawyer garnish his own

15   client's accounts.  *Id.,* at 9-11.  The court noted that it put the lawyers at risk of violating the

16   automatic bankruptcy stay and put their clients at risk.  *Id.*  A date was set for an oral opinion on

17   the final application for fees.  *Id.*

18        On February 21, 2013, the bankruptcy court awarded $2,008.10 in final attorney's fees

19   and costs to Sterbick.  Dkt. 8-7, at 209.  In its oral opinion, the bankruptcy court noted that under

20   11 U.S.C. § 330, an applicant is entitled to reasonable compensation for actual, necessary

21   services and that it is the fee applicant's burden to show the fees are reasonable.  Dkt. 8-8, at 33.

22   The bankruptcy court related that in the Ninth Circuit, an examination of whether the burden of

23   the probable costs of legal services were disproportionately large in relation to the size of the

24

ORDER AFFIRMING ORDER GRANTING
SUMMARY JUDGMENT- 7

1   estate should be considered, as well as to what extent the estate will suffer if the services were

2   not rendered, and to what extent will the estate benefit if they are rendered.  Dkt. 8-8, at 33-34.

3   The bankruptcy court stated that:

4           The debtor alleges that the pending requests for attorney's fees are
        unreasonable.  To date the debtor has paid Sterbick $44,336.49 in legal fees for
5       what this court believes is a rather pedestrian Chapter 11 bankruptcy case.
            Additionally the debtor believes that Sterbick improperly advised it to file
6       the case because the judgment against David Layson, dba Layson's Restorations,
        as it was later determined by this court, that the debtor was not a party to the
7       judgment.
            The Court has insufficient evidence before it to determine whether a
8       Chapter 11 was necessary.  There were a number of billing and collection errors,
        however, that resulted in additional feels [sic] and costs to the debtor as well as
9       errors in judgment by Sterbick.

10  Dkt. 8-8, at 34.  The court noted that even though he corrected the errors later, Sterbick's attempt

11  to bill the $7,000 nonrefundable retainer was contrary to the bankruptcy code as was his change

12  in the hourly rates charged without notice to the client.  Dkt. 8-8, at 35.  The oral opinion further

13  provided:

14          The Court does take issue with the filing of an attorney fee lien on a
        current client for fees and finds it to be an error issuing garnishments once an
15      attorney has withdrawn with little or no notice or lift of stay from the pending
        bankruptcy.  Such acts, more importantly, damage the nature of the attorney-client
16      relationship by making counsel an adversary during the pendency of the
        bankruptcy and having inside information on the client in an attempt to collect its
17      fees after the attorney has withdrawn.
            Further additional fees and costs were incurred relate to the garnishment
18      and for bounced checks caused by the garnishments.  The debtor was required to
        remove funds from its bank account due to the garnishments and administrative
19      freeze related to the collection actions of Attorney Sterbick.
            As a result, the debtor asserts it was unable to complete a major order until
20      late March and they incurred canceled orders and lost sales for the first quarter of
        2013.
21          Lastly, at the commencement of the case, Mr. Layson, the owner of the
        debtor, held a substantial note receivable owed by the debtor.  Sterbick should
22      have made it clear at the beginning of the case that there was a conflict of interest
        between the principal and the debtor and he would need to have his own counsel.

23  Dkt. 8-8, at 35-36.  The opinion concluded:

24

ORDER AFFIRMING ORDER GRANTING
SUMMARY JUDGMENT- 8

1       Additional future attorney fees are now certain to be incurred in an attempt to resolve the lingering major issues in the case concerning litigation of a

2  substantial third-party claim as well as to amend and confirm a Chapter 11 plan, as new counsel will need to be brought up to date.

3       The Court has the duty to review the entire case in deciding a final application for attorney's fees and costs. It is also considered, however, that

4  Sterbick corrected most of the problems and has not requested additional fees for several months of work in his attempt to get paid.

5       The Court cannot ignore, however, that Sterbick also wrongly attempted collection efforts while the debtor was under the protection of the bankruptcy

6  court in total disregard of the success of the debtor for the sole purpose of making sure he was paid.

7       The Court must also consider the many billing errors that were made. These are relevant even though they occurred in prior applications.  For example,

8  say, for 11 U.S.C. Section 330(a)(5).

       Also important is that almost $45,000 in fees and costs and over a year

9  and a half from filing, the debtor has still to deal with the two largest issues of the case:  The Chapter 11 plan that now needs to be substantially amended to be

10  confirmed and a hearing over the claim that allegedly placed the debtor into bankruptcy that needed to be resolved by an evidentiary hearing.

11       The cost of the delay and mistakes by the former counsel are difficult to quantify, but taking the pleadings and evidence presented into consideration, this

12  court concludes that Sterbick is entitled to additional fees of $2,000 and costs of 810 - excuse me - costs of 8.10.  No other fees and costs will be awarded to

13  Sterbick in this case.

14  Dkt. 8-8, at 36-37.

15       Layson's did not file a notice of appeal of the bankruptcy court's rulings on Sterbick's

16  applications for attorney's fees and costs.

17       The bankruptcy court confirmed Layson's Plan of Reorganization on March 6, 2014, a

18  plan prepared by different counsel.  Dkt. 8-5, at 2-22.  The Order for Final Decree Closing Case

19  was entered on September 2, 2014.  *Id.*, at 23-24.

20  **C.  PROCEDURAL HISTORY OF ADVERSARY ACTION**

21       On December 5, 2014, Layson's and David Layson, individually, filed suit against

22  Sterbick (and his law office) in Pierce County, Washington Superior Court, case number 14-2-

23  14827-1, in connection with his representation of Layson's in the bankruptcy proceedings.  Dkt.

24

8-5, at 26- 36.  Layson's and Layson asserted claims against Sterbick for legal malpractice, breach of fiduciary duty, and for violations of Washington's Consumer Protection Act ("CPA"). *Id.*  Realizing that the case should be in the bankruptcy court, Layson's and Layson voluntarily dismissed the case.  *Id.*

On October 7, 2015, the bankruptcy court granted Layson's motion to reopen the bankruptcy.  Dkt. 9-2, at 2.  Layson's filed the instant adversary complaint on October 7, 2015.  Dkt. 9-4.  It is the dismissal of this adversary complaint that is the subject of this appeal.  Dkt. 1.  As in state court, Layson's again asserted claims against Sterbick for legal malpractice, breach of fiduciary duty, and for violations of the CPA in the adversarial complaint.  Dkt. 9-4.

On January 7, 2016, the bankruptcy court granted Sterbick's motion for summary dismissal of the complaint based on res judicata.  Dkts. 6-1 and 8-2.  The court's decision was given orally and a short order followed.  *Id.*  In the oral ruling, the bankruptcy court noted that both parties conceded that the last two elements of res judicata were satisfied:  that the decisions were made by a court of competent jurisdiction and that the parties in both actions were in privity.  Dkt. 6-1, at 46-47.  The court found that the first element was met because it found an identity in the two causes of action.  *Id.*  It held:

> The purpose of the fee application hearings was for this court to determine what fees and expenses should be allowed.  In making this determination, the court was governed 11 U.S.C. Section 330, and allowed fees based on a consideration of the nature, extent and value of such services.  That's in accordance with 11 U.S.C. Section 330(a)(3).

> The claims in the present adversary proceeding are based on the same services evaluated by the court as in the fee application hearings.  Res judicata bars any claims that could or should have been asserted in the earlier proceeding . . . [Layson's] was aware of the defendants' alleged malfeasance at the time of the fee hearings because his errors were specifically raised as a basis for disallowing fees, including the recommendation to file bankruptcy, failure to file a cash collateral motion, improper garnishment, et cetera.

> These are the same claims that form the basis for the current adversary proceeding. . . In addition, [Layson's] was also represented by bankruptcy counsel. . . The fact that [Layson's] raised this objection and this court reduced fees as a result creates a stronger basis for applying res judicata.

Dkt. 6-1, at 49-51.  The bankruptcy court held that a final fee award is a final decision and is appealable, especially where, as here, "the attorneys for the debtors have been discharged from further representation" and so the second element of res judicata was met.  Dkt. 6-1, at 47 (*citing In re Iannochino,* 242 F.3d 36 (1st Cir. 2001) and *In re Yerkamov,* 718 F.2d 1465 (9th Cir. 1983)).  Further, the court noted that not only had Sterbick's representation ceased on November 1, 2012, Layson's plan of reorganization was confirmed on March 6, 2014, and case was closed on September 17, 2014, and so the there was a final judgment on the merits.  Dkt. 6-1, at 47-48.  The bankruptcy court concluded that the adversary complaint was barred by res judicata.  Dkt. 6-1, at 49-51.  The Court also noted that the claims in the adversary complaint **may** be barred by collateral estoppel because the issues are identical, final judgment was rendered, the parties are the same and application of the doctrine does not work an injustice.  Dkt. 6-1, at 52 (*emphasis added*).  This appeal followed.  Dkt. 1.

### D.  ISSUES RAISED ON APPEAL

Layson's raises three issues on appeal:

(1) Whether the Bankruptcy Court erred as a matter of law by finding that all the claims for legal malpractice brought by Layson's against their former bankruptcy counsel, Sterbick, were barred under the doctrine of res judicata?

(2) Whether the Bankruptcy Court erred as a matter of law by finding that all the claims for legal malpractice brought by Layson's against Sterbick were barred under the doctrine of collateral estoppel?

(3) Whether the Bankruptcy Court erred as a matter of law by finding that Layson's claim against Respondents for violation of the Consumer Protection Act were barred under the doctrines of *res judicata* and collateral estoppel?

ORDER AFFIRMING ORDER GRANTING
SUMMARY JUDGMENT- 11

1

**E.  ORGANIZATION OF OPINION**

2      This opinion will address the issues raised on appeal by first examining whether the claims in

3  the adversary complaint are barred by res judicata, then collateral estoppel and lastly, address

4  other issues regarding the dismissal of the CPA claim.

5                          **II.      DISCUSSION**

6      **A.  STANDARD OF REVIEW**

7      This Court reviews the bankruptcy court's legal findings de novo. *Blausey v. U.S.*

8  *Trustee*, F.3d 1124, 1132 (9th Cir. 2009). Factual findings are reviewed for clear error, remaining

9  undisturbed "unless these findings leave the definite and firm conviction that a mistake has been

10  committed by the bankruptcy judge." *In re Banks*, 263 F.3d 862, 869 (9th Cir. 2001).

11      **B.  RES JUDICATA**

12      Res judicata "precludes lawsuits on any claims that were raised or could have been raised in

13  a prior action." *Stewart v. Bancorp,* 297 F.3d 953, 956 (9th Cir. 2002).  Res judicata applies

14  where there is:  1) an identity of claims, 2) a final judgment on the merits, 3) by a court of

15  competent jurisdiction, and 4) privity between the parties. *Tahoe-Sierra Pres. Council, Inc. v.*

16  *Tahoe Reg'l Planning Agency,* 322 F.3d 1064, 1077 (9th Cir. 2003); *Rein v. Providian Financial*

17  *Corporation,* 270 F.3d 895, 899 (9th 2001).

18      It is undisputed that the bankruptcy court was a court of competent jurisdiction and that the

19  parties are in privity.  Dkts. 8 and 9.  The two elements at issue are whether there is an identity of

20  claims and a final judgment on the merits.

21              1.  Identity of Claims

22          Determining whether there is an identity of claims requires consideration of four

23  criteria, which are not applied "mechanistically:"

24

1    (1) whether the two suits arise out of the same transactional nucleus of facts; (2)
     whether rights or interests established in the prior judgment would be destroyed or
2    impaired by prosecution of the second action; (3) whether the two suits involve
     infringement of the same right; and (4) whether substantially the same evidence is
3    presented in the two actions.

4    *Mpoyo v Litton Electro-Optical Sys*., 430 F.3d 985, 987 (9th Cir. 2005).

5        Consideration of these factors counsels that there is an identity of claims in this

6    adversarial case and those raised in the underlying bankruptcy during the attorney's fees

7    proceedings.  The first element, the common nucleus criterion, is often outcome determinative of

8    whether there is an identity of claims.  *Mpoyo,* at 987.  "Whether two events are part of the same

9    transaction or series depends on whether they are related to the same set of facts and whether

10   they could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th

11   Cir.1992) (*citing* Restatement (Second) Judgments § 24(2) (1982)).

12       The facts Layson's now uses to make its claims for malpractice, breach of fiduciary duty

13   and for violations of the CPA are related to, or are the same, set of facts it relied on opposing the

14   fee applications.  In Layson's opposition to the second and final fee requests, it argued that: (1)

15   fees charged were not in accord with the fee agreement because higher hourly rates were used,

16   (2) there were instances of double billing, (3) the $7,000 nonrefundable retainer was collected

17   contrary to the bankruptcy code because no services were rendered for it and it should be

18   disgorged (Dkt. 8-7 at 131-138), (4) requested fees were unreasonable and excessive considering

19   the work performed, (5) fees were charged to correct counsel's own errors, (6) Sterbick

20   improperly failed to notify Layson's of the garnishments (Dkt. 8-7, at 169-170), (6) Sterbick

21   failed to provide competent legal advice in the filing of the Chapter 11 petition because the

22   Minasian judgment was not against Layson's, in failing to advise the principals of Layson's

23   regarding an "officer's note," and in not promptly having proposed a plan that would resolve this

24

ORDER AFFIRMING ORDER GRANTING
SUMMARY JUDGMENT- 13

1    relatively simple case despite receiving over $44,336.49 in fees, and (7) Sterbick improperly

2    garnished Layson's (even when Layson's was his client) (Dkt. 8-7, at 181-194).  Layson's

3    argued that as a result of Sterbick's conduct, it was damaged by being charged excessive fees,

4    needing to pay more attorney's fees to resolve the case, disruption of/lost business as a result of

5    having its bank accounts improperly frozen, and significant and unnecessary fees.  *Id.*  Layson's

6    adversarial complaint now alleges that it was damaged by (1) Sterbick's advice to file the

7    Chapter 11 petition because the Minasian judgment was not against Layson's, (2) Sterbick's

8    failure to timely file a plan (or a motion for an extension of time), and when he did file a

9    proposed plan, it was inadequate, (3) Sterbick's failure to file a motion to use cash collateral

10   resulting in a more favorable settlement than was necessary with Washington Federal Bank, and

11   (4) Sterbick's submittal of at least eight orders to the bankruptcy court that were rejected as

12   either improper or untimely.  Dkt. 9-4.  The claims Layson's now makes are based on related (or

13   the same) set of facts it relied on in opposing the fee applications.

14          Moreover, the bankruptcy court considered Sterbick's conduct, and his competency in

15   representing Layson's, when it reduced Sterbick's second and final requests for fees.  Dkt. 8-8, at

16   37.  The bankruptcy court stated it considered 11 U.S.C. § 330.  *Id.*  Section 330(a) provides:

17          (1) After notice to the parties in interest . . . the court may award to a . . .
            professional person employed under section 327 or 1103--
18
19                 (A) reasonable compensation for actual, necessary services rendered by
                   the . . . professional person, or attorney and by any paraprofessional
                   person employed by any such person; and
20                 (B) reimbursement for actual, necessary expenses.

21          (2) The court may . . . award compensation that is less than the amount of
            compensation that is requested.
22
23          (3) In determining the amount of reasonable compensation to be awarded  . . . the
            court shall consider the nature, the extent, and the value of such services, taking
            into account all relevant factors, including--
24

ORDER AFFIRMING ORDER GRANTING
SUMMARY JUDGMENT- 14

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not--

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C.A. § 330 (West).  "The debtor's attorney is included among the professionals compensated under section 330 on the theory that his services, while not performed for the direct benefit of the estate, may be helpful to the bankruptcy process because they facilitate orderly administration of the estate." *In re Yermakov*, 718 F.2d 1465, 1470 (9th Cir. 1983). Accordingly, the bankruptcy court considered whether Sterbick's requests for compensation was for service that was "actual" and "necessary," beneficial to the estate, and "performed within a reasonable amount of time" in its award of fees. *Id.*  The court did not award fees for services that were unnecessarily duplicative, not likely to benefit the estate, or were not necessary to the administration of the case. *Id.*  The court, then, necessarily considered the adequacy of Sterbick's representation of Layson's in the determination of which, if any, of the fees should be

1  awarded. The bankruptcy court made its fee award based, in part, on the same facts offered in

2  support of the claims in this adversary proceeding.

3        Further, Layson's claims regarding the adequacy of Sterbick's representation, in both the

4  malpractice, breach of fiduciary duty, and violation of the CPA context and the fee application

5  context, could have been "conveniently be tried together." *Western Sys., Inc.,* at 871.  In its

6  opposition to the fee applications, Layson's raised several examples of Sterbick's failure to

7  properly represent it.  Layson's was aware that the attorney client relationship was broken by late

8  September/early October 2012 when it hired new counsel to represent it.  Sterbick points out that

9  under the Bankruptcy Rules, Layson's could have pursued the malpractice claims in response to

10 the fee applications by moving the bankruptcy court to apply the rules of adversary procedure.

11 Dkt. 9; (*citing In Re Paige,* 610 F.3d 865, 874 (5th Cir. 2010)(where party objects to a fee

12 request in a bankruptcy proceeding and includes a malpractice claim, the fee application would

13 become an adversary proceeding under part VII of the Bankruptcy Rules as required by Fed. R.

14 Bank. P. 3007)).  Not only was Layson's aware of the facts supporting its malpractice/breach of

15 fiduciary duty claims at the time of the contested fee hearings, Layson's was represented by

16 counsel, and there was a process by which the claims now being asserted could have been raised.

17 The claims asserted in the adversary action and in response to the fee applications "arise out of

18 the same transactional nucleus of facts."

19        The other factors also weigh in favor of finding an identity of claims.  The rights of

20 Sterbick in receiving fees would be destroyed or impaired by prosecution of the adversary action,

21 the two suits involve the value of the services rendered, and substantially the same evidence

22 would be presented in both actions.  There is an identity of claims here.

23

24

ORDER AFFIRMING ORDER GRANTING
SUMMARY JUDGMENT- 16

1                 2.   <u>Final Judgment on the Merits</u>

2        There was a final judgment on the merits. The bankruptcy court permitted Sterbick to

3 withdraw from the case on November 1, 2012. It issued its decision regarding Sterbick's final

4 fee request on February 21, 2013. "Thus, the bankruptcy court order conclusively determined

5 the entire section 330 compensation to be paid [Sterbick]. From this premise it follows that the

6 court's order, entered in the peculiar context of a bankruptcy proceeding, conclusively

7 determined a separable dispute in the case, and constitutes a 'final judgment, order, or decree'

8 appealable under 28 U.S.C. § 1293(b)." *In re Yermakov*, 718 F.2d 1465, 1469 (9th Cir. 1983).

9 The estate's plan was confirmed on March 6, 2014, and the Order for Final Decree Closing Case

10 was entered on September 2, 2014. Dkt. 8-5, at 2-24. "Confirmation of a plan of reorganization

11 constitutes a final judgment in bankruptcy proceedings." *In re Heritage Hotel P'ship I*, 160 B.R.

12 374, 377 (B.A.P. 9th Cir. 1993), *aff'd*, 59 F.3d 175 (9th Cir. 1995). "Like final judgments,

13 confirmed plans of reorganization are binding on all parties, and issues that could have been

14 raised pertaining to such plans are barred by res judicata." *Id.*

15        Layson's argues that a final decision on its malpractice, breach of fiduciary duties and

16 CPA claims were not made, and so the "finality" element fails. Dkt. 9. Layson's misapprehends

17 the "finality" element. Res judicata bars litigation of claims that were raised or could have been

18 raised in the prior litigation. *Stewart,* at 956; *In re Bays,* 413 B.R. 866, 877 (Bankr. E.D. Wash.

19 2009). The fact that the bankruptcy court did not specifically rule on Layson's claims for

20 malpractice, breach of fiduciary duty, or CPA claims is not determinative of whether there was a

21 final decision on the merits for purposes of res judicata.

22        Layson's argues that there are no Ninth Circuit cases which address the res judicata question

23 raised in this case, and the two cases on which the bankruptcy court relied, *In re: Intelogic Trace,*

24

*Inc.,* 200 F.3d 382 (5th Cir. 2000) and *In re: Iannochino,* 242 F.3d 36, 41 (1st Cir. 2001) are distinguishable and should not govern.  Dkt. 8.

*In re: Intelogic Trace* was an adversary proceeding brought by the trustee against an accountant and other professional advisors at Ernst & Young, alleging they committed malpractice in the provision of services in an underlying bankruptcy.  The court held that res judicata barred the adversary proceeding because of the bankruptcy court's decisions regarding professional fee awards to the accountant and advisors under Section 330.  It held,

> By granting Ernst & Young's fee application, the bankruptcy court implied a finding of quality and value in Ernst & Young's services. Similarly, the Trustee's claims in the present suit arise from Ernst & Young's alleged omissions in rendering the very same services considered by the bankruptcy court in the fee application hearing. The Trustee's malpractice claims, challenging the sufficiency and value of Ernst & Young's services, inevitably involve the nature of the services performed for the debtor's estate and the fees awarded under superintendence of the bankruptcy court; they cannot stand alone.

*In re Intelogic Trace, Inc.*, 200 F.3d 382, 387-88 (5th Cir. 2000)(*internal quotations and citations omitted*).  *In re: Iannochino* was a malpractice action against a former bankruptcy attorney.  The malpractice action was dismissed based on the res judicata effect of the bankruptcy court's attorney's fee awards.  While not precisely on point, *Intelogic* and *Iannochino* are sufficiently similar to this case to provide guidance here.  The differences Layson's points out, for example, the fact that no allegation of malpractice was raised at the fee application stage in those cases as it was here, strengthens the application of res judicata because the issues were actually raised and the bankruptcy court considered them and reduced the fee award.  The bankruptcy court did not err by relying on those cases.

      3.  <u>Conclusion</u>

Res judicata bars Layson's adversary complaint.  The bankruptcy court's ruling dismissing the adversary complaint due to the application of res judicata should be affirmed.

ORDER AFFIRMING ORDER GRANTING
SUMMARY JUDGMENT- 18

**C.  COLLATERAL ESTOPPEL**

The bankruptcy court stated in its oral ruling that the claims asserted here **may** also be barred by the doctrine of collateral estoppel.  Dkt. 6-1, at 52.  By concluding that the claims raised in the adversary complaint are barred by the doctrine of res judicata, the Court need not reach whether the claims are also barred by the doctrine of collateral estoppel.

Layson's asserts for the first time on appeal that the doctrine of collateral estoppel bars Sterbick from arguing that he committed no errors at all and is subject to the bankruptcy court's findings in that regard.  Dkt. 8.  The court need not consider issues raised for the first time on appeal.  *Grimmett v. Brown*, 75 F.3d 506, 515 (9th Cir.1996), *cert. denied*, 117 S.Ct. 759 (1997). Furthermore, Sterbick is not arguing that he committed no errors, just that the bankruptcy court considered his representation of Layson's in the bankruptcy during the contested fee proceedings and so this case is barred by res judicata.

Layson's also argues that application of either res judicata or collateral estoppel would work injustice on Layson's.  Dkt. 8.  While the Court can sympathize with Layson's, the facts here do not support its contention that application of these doctrines would work an injustice.

**D.  CPA CLAIM**

Layson's conceded at oral argument before the bankruptcy court that if the doctrines of res judicata or collateral estoppel barred its claims for malpractice or breach of fiduciary duty, its claims for violation of the CPA would also be barred.  Dkt. 6-1, at 29.  Layson's makes no substantive argument to the contrary in this appeal.  Further, Sterbick argues that this Court should affirm the bankruptcy court's summary dismissal of Layson's CPA claim because it did not, and has not, presented evidence to support the fourth element - requiring an impact on the public interest.  Dkt. 9, at 32.  Layson's does not address this issue.  This Court can affirm the

1  bankruptcy court's dismissal of the claim on any ground supported by the record.  *Atel Financial*

2  *Corp. v. Quaker Coal Co.,* 321 F.3d 924, 926 (9th Cir. 2003).  The dismissal of the CPA claim

3  was also proper because Layson's did not point to evidence of the fourth element of its CPA

4  claim.

5  **E.  CONCLUSION**

6  Layson's appeal of the Bankruptcy Court's order summarily dismissing the adversary

7  complaint (Dkt. 1) should be **DENIED**.   The judgment is **HEREBY AFFIRMED**.

8  **IT IS SO ORDERED**.

9  The Clerk is directed to send uncertified copies of this Order to all counsel of record and

10  to any party appearing *pro se* at said party's last known address.

11  Dated this 25th day of May, 2016.

12

13

14  ROBERT J. BRYAN
United States District Judge

15

16

17

18

19

20

21

22

23

24